LAWYERS FOR CLEAN WATER, INC.
Daniel Cooper (Bar No. 153576)
Email: daniel@lawyersforcleanwater.com
Drevet Hunt (Bar No. 240487)
Email: drev@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone:  (415) 440-6520
Facsimile:  (415) 440-4155

JS-6

*Attorneys for Plaintiff*
LOS ANGELES WATERKEEPER

*Plaintiff's Additional Counsel Listed on Next Page*

LAW OFFICES OF THOMAS M. BRUEN, P.C.
Thomas M. Bruen (Bar No. 63324)
Email: tbruen@tbsglaw.com
1990 N. California Boulevard, Suite 620
Walnut Creek, California 94596
Telephone:   (925) 295-3131
Facsimile:    (925) 295-3132
*Attorney for Defendants*
REPUBLIC SERVICES, INC. AND ALLIED WASTE TRANSFER SERVICES OF
CALIFORNIA, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation,<br><br>                         Plaintiff,<br><br>          vs.<br><br>REPUBLIC SERVICES, INC., et al<br><br><br><br>                 Defendants. | Civil Case No.<br><br>CV14-00932-DDP (PLAx)<br><br>**ORDER RE: CONSENT DECREE AND JUDGMENT**<br><br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |

1   LOS ANGELES WATERKEEPER
2   Tatiana Gaur (Bar No. 246227)
    Email:  tgaur@lawaterkeeper.org
3   120 Broadway, Suite 105
    Santa Monica, California 90401
4   Telephone:  (310) 394-6162, ext. 102
    Facsimile:   (310) 394-6178
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Los Angeles Waterkeeper ("Plaintiff" or "Waterkeeper") and Defendants Republic Services, Inc. and Allied Waste Transfer Services of California, LLC (collectively "Republic" or "Defendants"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** Waterkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS,** Waterkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Allied Waste Transfer Services of California, LLC is the owner and/or operator of a waste processing and transfer facility located at 2509 West Rosecrans Avenue, Los Angeles, CA 90059, hereinafter referred to by the Settling Parties as the "Compton Transfer Facility";

**WHEREAS**, Waterkeeper has approximately 3,000 members who live and/or recreate in and around the Los Angeles River watershed and Los Angeles area waterbodies receiving discharges from the Compton Transfer Facility, including the Los Angeles River, Los Angeles River Estuary, Los Angeles/Long Beach Harbor, San Pedro Bay, Long Beach City Beach, and the Pacific Ocean;

**WHEREAS,** discharges from the Compton Transfer Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, on December 4, 2013, Waterkeeper sent Defendants, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water

Resources Control Board ("State Board"), and the Los Angeles Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Compton Transfer Facility;

**WHEREAS**, on February 6, 2014, Waterkeeper filed a complaint against Defendants in the United States District Court, Central District of California (Case No. CV14-932-DDP (PLAx)), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Compton Transfer Facility ("Complaint");

**WHEREAS**, Waterkeeper alleges Defendants to be in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act with respect to the Compton Transfer Facility;

**WHEREAS**, Defendants deny all allegations in the Notice Letter and Complaint relating to the Compton Transfer Facility;

**WHEREAS**, Waterkeeper and Defendants have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2.     Venue is appropriate in the Central District of California pursuant to Section

505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Compton Transfer Facility is located within this District;

3.      The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.      Plaintiff has standing to bring this action;

5.      The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.    OBJECTIVES**

6.      It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, and to resolve those issues alleged by Waterkeeper in its Complaint. In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree and to comply with the requirements of the Storm Water Permit and all applicable provisions of the Clean Water Act. Specifically, Receiving Water Limitation C(2) in the Storm Water Permit requires that discharges from the Compton Transfer Facility "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Effluent Limitation B(3) of the Storm Water Permit requires that Best Management Practices ("BMPs") at the Compton Transfer Facility be developed and implemented to achieve Best Available Technology Economically Achievable ("BAT") for toxic and non-conventional pollutants and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants (collectively "BAT/BCT"). Defendants shall develop and implement BMPs necessary to comply with the Storm Water Permit requirement to achieve compliance with BAT/BCT standards and with the applicable water quality standards. BMPs must be developed and implemented to prevent discharges and/or to reduce contamination in storm water from the Compton Transfer Facility in compliance with this Consent Decree.

## II.   AGENCY REVIEW AND TERM OF CONSENT DECREE

7.      Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendants if requested. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. If the parties are unable to reach agreement to modify this Consent Decree so as to resolve the issues raised by the Federal Agencies, and this Consent Decree as so modified is not approved by the Federal Agencies, this Consent Decree shall be of no force and effect. Furthermore, if this Consent Decree is not approved by the Court, this Consent Decree shall be of no further force and effect.

8.      The term "Effective Date" as used in this Consent Decree shall mean the day this Consent Decree is signed and entered by a United States District Court Judge.

9.      This Consent Decree shall terminate as to the Compton Transfer Facility on June 30, 2017 (the "Termination Date"), unless there is a prior ongoing, unresolved dispute regarding Defendants' compliance with this Consent Decree. In the absence of such an ongoing, unresolved dispute, this Consent Decree shall terminate on the Termination Date. Should there be such a dispute, Waterkeeper shall file a Notice of Dispute with the Court prior to the Termination Date, which shall identify the issue in dispute. The filing of such Notice of Dispute by Waterkeeper shall extend the Termination Date until the Court determines the dispute has been resolved and thereupon dismisses the case or, alternatively, if the Settling Parties file a stipulation for dismissal.

10.     Waterkeeper may conduct an inspection of the Compton Transfer Facility forty-five (45) days prior to the Termination Date or, at Waterkeeper's option, following the filing of the Notice of Dispute. Defendants shall work with Waterkeeper to promptly

schedule and accommodate the inspection, if requested. The inspection shall be conducted according to the rules applicable to annual site inspections in paragraph 61 - 64 below.

## III.   COMMITMENTS OF THE SETTLING PARTIES

### A.   Definitions

11.   For purposes of this Consent Decree, "Cattle Grid" means a grid composed of parallel metal bars that is set at ground level in an exit way with a concrete collection basin beneath it, and is similar to the grids used to prevent cattle from crossing a roadway while allowing the passage of vehicles.

12.   For purposes of this Consent Decree, "Drainage Area 1" means the northern portion of the Compton Transfer Facility, as outlined in the Compton Transfer Facility Site Map, which is attached hereto as Exhibit A.

13.   For purposes of this Consent Decree, "Drainage Area 2" means the southern area of the Compton Transfer Facility, bordered by Rosecrans Avenue to the south and includes the Transfer Station Building, as outlined in the Compton Transfer Facility Site Map, which is attached hereto as Exhibit A.

14.   For purposes of this Consent Decree, "Filtrexx EnviroSoxx" means the Filtrexx® EnviroSoxx® sediment control devices sold by Filtrexx Land Improvement Systems, *See* http://www.filtrexx.com/envirosoxx/.

15.   For purposes of this Consent Decree, "Grattix box(es)" means the "Grattix Rain Garden in a Box" developed by Port of Vancouver USA. *See* http://www.portvanusa.com/assets/Grattix-how-to-flyer.pdf.

16.   For purposes of this Consent Decree, the "Scale Building" means the building that is located in Drainage Area 1, as labeled on the Compton Transfer Facility Site Map, which is attached hereto as Exhibit A.

17.   For purposes of this Consent Decree, "Speed Bump Berms" means impervious berms composed of a low-raised ridge that are similar in shape to the speed bumps used in roads to reduce vehicles' speed.

18.     For purposes of this Consent Decree, the "Truck Wash Area" means the area located in Drainage Area 2 in the southern portion of the Compton Transfer Facility, as labeled on the Compton Transfer Facility Site Map, which is attached hereto as Exhibit A.

**B.     Non-storm Water**

19.     To ensure there are no unauthorized non-stormwater discharges, any non-stormwater discharges from the Compton Transfer Facility not authorized by the Storm Water Permit or other NPDES permit shall be considered a breach of this Consent Decree.

**C.     Storm Water Pollution Reduction Measures**

20.     The storm water pollution control measures required by this Consent Decree shall be designed and operated to manage, through infiltration, treatment, and/or diversion, 1.77 inches of rain falling in a 24-hour period ("95% Design Storm"). The Settling Parties agree that this number represents the storm water from all storm events with total precipitation that is less than or equal to ninety-five (95) percent of all 24-hour storms, based on 1984-2014 historical rainfall measured at the Los Angeles 96th and Central rain gauge. The structural storm water pollution control measures agreed to under this Consent Decree shall be in place and operable throughout the entire year.

21.     All BMPs listed in this section shall ensure that no storm water shall be discharged from the Compton Transfer Facility, the boundaries of which are outlined on the Compton Transfer Facility Site Map attached hereto as Exhibit A, up to the 95% Design Storm.

**a.   Infiltration Basins**

22.     In Drainage Area 1, Defendants shall install the proposed infiltration basin near the Scale Building, as described in Exhibit B, no later than September 30, 2014.

23.     In Drainage Area 2, Defendants shall install the proposed infiltration basin next to the Truck Wash Area, as described in Exhibit B, no later than September 30, 2014.

24.     For Drainage Areas 1 and 2, Defendants shall develop a plan by September 30, 2014 to implement the infiltration basin sampling requirements in paragraphs 41 – 47 of this Consent Decree.

**b.  Trench Drains**

25.     Defendants shall install the trench drains described in Exhibit B across the Compton Transfer Facility exit gates, as depicted in Exhibit A, by August 30, 2014.

**c.  Storm Water Pretreatment**

26.     Defendants shall install Grattix boxes as described in Exhibit B at the locations shown in Exhibit A by August 30, 2014. The Grattix boxes shall contain a metals removal agent and shall be directed to an infiltration basin(s).

27.     By September 30, 2014, Defendants shall place Filtrexx Envirosoxx for Oil and Hydrocarbon Removal upgradient and proximate to the inlets to the infiltration basins described in paragraphs 22 and 23.

**d.  Canopies and Berms**

28.     Defendants shall install Speed Bump Berms as described in Exhibit B at the locations shown in Exhibit A by August 30, 2014.

29.     Defendants shall install canopies at the locations shown on Exhibit A by September 30, 2014. All such canopies shall be coated metal or equipped with gutters to collect and direct all canopy run-off to downspouts that terminate in Grattix boxes. The canopies shall provide sufficient cover to eliminate all storm water contact with the truck wash area and fueling area. The design standards for these Grattix boxes are described in Exhibit B.

30.     Defendants shall install asphalt berm curbing as described in Exhibit B at the locations labeled "Proposed Asphalt Berms" in Exhibit A by August 30, 2014.

31.     All water collected from the areas that are covered or surrounded by berms shall be collected and disposed of properly. This water shall not be infiltrated at the Compton Transfer Facility.

///

### e.  __Track-Off Control System__

32.     In Drainage Area 1, Defendants shall install Cattle Grids for track-off control, as described in Exhibit B, at the locations shown in Exhibit A by August 30, 2014.

### f.  __Litter Control__

33.     Defendants shall adopt a Litter Control Log to document trash control activities at the Compton Transfer Facility within thirty (30) days of the Effective Date. The Litter Control Log will be part of any and all revised Storm Water Pollution Prevention Plans ("SWPPP") for the Compton Transfer Facility. A blank template for the Litter Control Log is attached hereto as Exhibit C.

34.     Defendants shall designate a person responsible for litter control within thirty (30) days of the Effective Date. Beginning on August 30, 2014, this person shall inspect and pick up litter around the perimeter of the Compton Transfer Facility daily and record these activities in the Litter Control Log. The person shall also collect litter outside of the Compton Transfer Facility fence line near the main entrance/exit and the Compton Transfer Facility wall/irrigated lawn along Rosecrans Street. The areas outside of the main entrance fence that are accessible are indicated on the Compton Transfer Facility Site Map, which is attached hereto as Exhibit A.

35.     Defendants shall install wind breaks/screens in front of the inaccessible areas outside of the fence line, where not already installed, by August 30, 2014, to limit movement of trash from the Compton Transfer Facility to off-site areas.

### D.  __Sampling at the Compton Transfer Facility__

36.     Defendants shall install a recording rain gauge capable of continuously recording rainfall to 0.01 inches at the Compton Transfer Facility within thirty (30) days of the Effective Date. Defendants shall maintain the recording rain gauge in accordance with the manufacturers' recommendations, maintain records of all maintenance, maintain records of rain data, and provide such rain gauge data to Waterkeeper at the end of each calendar quarter during the Wet Season (October 1 – May 30) for the term of this

1   Consent Decree.

2       37.    In addition to the requirements of paragraph 36, Defendants shall provide

3   the records described in paragraph 36 to Waterkeeper within ten (10) days of any written

4   request by Waterkeeper.

5           **a.**  **Collecting Storm Water Samples**

6       38.    <u>Storm Water Monitoring.</u> By August 30, 2014, Defendants shall develop a

7   plan for monitoring all storm water and non-storm water discharges from the Compton

8   Transfer Facility whether or not the 95% Design Storm is exceeded.

9       39.    During the life of this Consent Decree, Defendants shall collect samples of

10  any storm water discharge from the infiltration basins and from industrial areas at the

11  Compton Transfer Facility. For purposes of this Consent Decree, this includes any storm

12  water discharge occurring during the Compton Transfer Facility's operating hours[1] or, for

13  storm water stored onsite prior to discharge, whenever storm water is released, whether

14  during operating hours or not.

15      40.    All samples collected pursuant to paragraph 39 shall be analyzed for the

16  following parameters: total suspended solids, copper, lead, zinc, oil and grease,

17  aluminum, arsenic, cadmium, iron, mercury, nickel, biochemical oxygen demand, silver,

18  chemical oxygen demand, selenium, ammonia, cyanide, magnesium, pH, and fecal

19  coliform.

20      41.    <u>Influent Monitoring</u>. Defendants shall collect samples of storm water

21  conveyed to the infiltration basins installed pursuant to paragraphs 22 and 23

22  immediately prior to the conveyance into the infiltration basins. Samples shall be

23  collected during the first hour of discharge of three storm events of 0.1 inch or greater

24  occurring during the Wet Season at the Compton Transfer Facility. Defendants shall

25  analyze all samples collected pursuant to this paragraph for the constituents identified in

26  Table 1 below.

[1] The Compton Transfer Facility's operating hours are Monday through Friday 6am to 6pm. The Facility is closed on Saturday and Sunday.

### b. <u>**Sampling Analysis and Reporting**</u>

42.     Defendants shall use a state certified laboratory to conduct all analysis pursuant to this Consent Decree. When requesting analysis of influent samples, Defendants shall select analytical limits such that, at a minimum, the method detection limits are below the Influent Numeric Limits in Table 1. When requesting analysis of storm water discharges other than discharges to the infiltration basins, Defendants shall select analytical limits such that, at a minimum, the method detection limits are below EPA Benchmark Levels and applicable water quality standards for storm water.

43.     Defendants shall request that results of all sample analyses required by this Consent Decree be reported to them within fifteen (15) days of laboratory receipt of the sample.

44.     Defendants shall request that results of all sample analyses required by this Consent Decree for metals be reported as total concentration levels.

45.     Defendants shall provide the complete laboratory results of all samples collected at the Compton Transfer Facility to Waterkeeper within fifteen (15) days of receiving the results.

46.     Defendants shall submit a written report to Waterkeeper no later than June 15 at the end of each Wet Season that contains all rain gauge data for the Wet Season, all storm water samples collected at the Compton Transfer Facility, all analytical results from storm water or influent samples collected at the Compton Transfer Facility, an explanation of any failure to collect and analyze a storm water discharge as required by this Consent Decree or the Storm Water Permit, and an explanation of any failure to collect and analyze influent samples as required by paragraph 41 of this Consent Decree.

47.     Any failure to sample pursuant to the requirements of paragraphs 39 and 41 of this Consent Decree shall be documented and explained to Waterkeeper by email within five (5) days of the date a sample could have been collected during operating hours but was not.

///

1

**E.   Numeric Limits and Action Plan for Exceedances**

2

48.   <u>Numeric Limits for Influent</u>. Storm water that is routed to an infiltration

3

basin at the Compton Transfer Facility shall not contain contaminants in excess of the

4

limits in Table 1 below ("Influent Numeric Limits") prior to being discharged into the

5

infiltration basin.

6

**Table 1: Influent Numeric Limits**

7

| Contaminant | Limit |
|---|---|
| Aluminum | 5.00 mg/L |
| Arsenic | 0.010 mg/L |
| Cadmium | 0.10 mg/L |
| Copper | 1.30 mg/L |
| Lead | 0.10 mg/L |
| Mercury | 0.0024 mg/L |
| Silver | 0.10 mg/L |
| Zinc | 5.00 mg/L |
| Total Petroleum Hydrocarbons | 15 mg/L |

17

49.   <u>Influent Action Plan for Table 1 Exceedances.</u> Defendants shall submit a

18

written plan for reducing and/or eliminating the discharge of pollutants in storm water

19

infiltrated at the Compton Transfer Facility ("Influent Action Plan") when influent

20

sampling during the Wet Season demonstrates that any contaminant specified in Table 1

21

exceeds the Influent Numeric Limits at the Compton Transfer Facility. The Influent

22

Action Plan shall be specific to the Compton Transfer Facility. The Influent Action Plan

23

for the Compton Transfer Facility must be submitted to Waterkeeper within thirty (30)

24

days of Defendants' receipt of sampling data showing exceedances of Table 1 Influent

25

Numeric Limits.

26

a.   <u>Influent Action Plan Requirements.</u> Each Influent Action Plan submitted

27

shall include at a minimum: (1) the identification of the contaminant(s) discharged in

28

excess of the Influent Numeric Limit(s), (2) an assessment of the source of each contaminant exceedance, (3) the identification of additional BMPs, including treating storm water, that shall be implemented to achieve compliance with the Influent Numeric Limit(s), as well as the design plans and calculations of these additional BMPs,[2] and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than September 30 (prior to the next Wet Season).

b.   <u>Influent Action Plan Review.</u> Waterkeeper shall have forty-five (45) days upon receipt of Defendants' Influent Action Plan to provide Defendants with comments. Within fourteen (14) days from the date Waterkeeper comments on Defendants' Influent Action Plan, Defendants shall provide Waterkeeper with a written explanation if Defendants refuse to integrate any of Waterkeeper's comments into the Influent Action Plan. Any disputes as to the adequacy of the Influent Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

c.   Defendants shall have until September 30 (following the Wet Season in which the exceedances giving rise to the obligation to submit an Influent Action Plan occurred) to implement the Influent Action Plan. Defendants shall notify Waterkeeper in writing when the Influent Action Plan has been implemented.

d.   Defendants shall diligently file and pursue all required local agency applications for permits and/or approvals for the BMPs included in any Influent Action Plan. Defendants shall further diligently pursue the procurement of contractors, labor, and materials to complete all such BMPs by the September 30 deadline described in paragraph 49.c above, and shall use their best efforts to meet these deadlines. Defendant's

---

[2] If storm water flows exceed the influent limits in Table 1 for any contaminant(s) that may be removed with Filtrexx Envirosoxx for Heavy Metal Removal, Defendants' Influent Action Plan shall require, at a minimum, the implementation of such Filtrexx Envirosoxx upgradient and proximate to the inlet(s) to the infiltration basin(s) that receives the storm water flows that sampling indicates exceeds the influent limits.

1   unexcused failure to meet this deadline shall be considered a breach of the Consent

2   Decree.

3   **F.     Visual Observations**

4        50.     During the life of this Consent Decree, Defendants shall conduct visual

5   observations during normal scheduled facility operating hours during every rain event

6   that produces a discharge at all discharge points at the Compton Transfer Facility.

7        51.     Defendants shall record any pollutants, odors, discolorations, or other

8   pollutant indicators observed during these visual observations and compare the results of

9   these observations to the sampling analyses conducted at the same locations. Visual

10  observation records shall be included in any Influent Action Plan required pursuant to the

11  requirements of this Consent Decree.

12  **G.     Monitoring and Reporting Program Revisions**

13       52.     By August 30, 2014, or forty-five (45) days after the Effective Date,

14  whichever is earlier, Defendants shall revise their Monitoring and Reporting Program

15  ("M&RP") for the Compton Transfer Facility to incorporate all sampling, analysis,

16  observation, and reporting requirements of this Consent Decree and the Storm Water

17  Permit.

18       53.     Defendants shall submit the revised M&RP for the Compton Transfer

19  Facility to Waterkeeper for review and comment. Waterkeeper shall provide comments,

20  if any, to Defendants within thirty (30) days of receipt of the M&RP. Defendants shall

21  incorporate Waterkeeper's comments into the M&RP, or shall justify in writing why any

22  comment is not incorporated within fifteen (15) days of receiving comments. Any

23  disputes over the adequacy of the revised M&RP shall be resolved pursuant to the dispute

24  resolution provisions of this Consent Decree, set out in Section IV below. Nothing in this

25  paragraph allowing Waterkeeper to review and approve Defendants' M&RP is intended

26  to allow Waterkeeper to seek to modify Defendants' obligations to implement and

27  maintain the BMPS described in this Consent Decree or to require Defendants to

28  implement and maintain additional BMPS that have not been negotiated and included in

this Consent Decree, or to otherwise modify the terms and conditions of this Consent Decree.

**H.      Storm Water Pollution Prevention Plan Revisions**

54.     By August 30, 2014, or forty-five (45) days after the Effective Date, whichever is earlier, Defendants shall revise the SWPPP for the Compton Transfer Facility to include all BMPs required by the Consent Decree and comply with all provisions of Section A of the Storm Water Permit.

55.     Defendants shall submit the revised SWPPP to Waterkeeper for review and comment. Waterkeeper shall provide comments, if any, to Defendants within sixty (60) days of receipt of the SWPPP. Defendants shall incorporate Waterkeeper's comments into the SWPPP, or shall justify in writing why any comment is not incorporated within fifteen (15) days of receiving comments. Any disputes as to the adequacy of the revised SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Nothing in this paragraph allowing Waterkeeper to review and approve Defendants' SWPPP is intended to allow Waterkeeper to seek to modify Defendants' obligations to implement and maintain the BMPS described in this Consent Decree or to require Defendants to implement and maintain additional BMPS that have not been negotiated and included in this Consent Decree, or to otherwise modify the terms and conditions of this Consent Decree.

56.     <u>Additional SWPPP Revisions</u>. Defendants shall revise the SWPPP for the Compton Transfer Facility if there are any changes in the Compton Transfer Facility's operations, including, but not limited to, changes to storm water discharge point(s) or revisions and/or additions to the BMPs implemented pursuant to any Influent Action Plans.

57.     Defendants shall submit any revised SWPPP to Waterkeeper for review and comment within ten (10) days of the SWPPP revision. Waterkeeper will provide comments, if any, to Defendants within thirty (30) days of receipt of any revised SWPPP. Defendants shall incorporate Waterkeeper's comments into any revised SWPPP, or shall

1   justify in writing why any comment is not incorporated within thirty (30) days of

2   receiving comments. Any disputes as to the adequacy of the revised SWPPP shall be

3   resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in

4   Section IV below**.**

5      **I.**    **Employee Training**

6      58.    Within thirty (30) days of the Effective Date of this Consent Decree,

7   Defendants shall develop and implement a training program, including any training

8   materials needed for effective implementation of the training program, to ensure: (i) that

9   there are a sufficient number of employees delegated to achieve compliance with the

10   Storm Water Permit and this Consent Decree, and (ii) that these employees are properly

11   trained to perform the required activities to achieve compliance with the Storm Water

12   Permit and this Consent Decree ("Training Program"). At a minimum the Training

13   Program shall include at least the following:

14      a.   <u>Language</u>. Defendants shall conduct the Training Program in the language

15   or languages in which all employees participating in the Training Program are fluent.

16      b.   <u>Non-Stormwater Discharges</u>. Defendants shall train all employees on the

17   Storm Water Permit's prohibition of non-storm water discharges, so that employees know

18   what non-storm water discharges are, that non-storm water discharges can result from

19   improper surface washing or dust control methods, and how to detect and prevent non-

20   storm water discharges to ensure compliance with paragraph 19 above.

21      c.   <u>BMPs</u>. Defendants shall train all employees on BMP implementation and

22   maintenance to ensure that BMPs are implemented effectively to prevent the exposure of

23   pollutants to storm water, to prevent the discharge of contaminated storm water, and to

24   ensure the proper treatment of storm water at the Compton Transfer Facility.

25      d.   <u>Storm Water Sampling</u>. Defendants shall designate an adequate number of

26   employees necessary to collect storm water samples from each discharge location as

27   required by this Consent Decree. The training shall include the proper sampling

28   protocols, including chain of custody requirements, to ensure storm water samples are

1    properly collected, stored, and submitted to a certified laboratory.

2         e.   <u>Influent Monitoring.</u> Defendants shall designate an adequate number of

3    employees necessary to collect samples of influent before it reaches the infiltration basins

4    as required by this Consent Decree. The training shall include the proper sampling

5    protocols, including chain of custody requirements, to ensure storm water samples are

6    properly collected, stored, and submitted to a certified laboratory.

7         f.   <u>Visual Observation Training.</u> Defendants shall provide training to all

8    employees at the Compton Transfer Facility regarding visual observations pursuant to

9    this Consent Decree and the Storm Water Permit.

10       59.      Training shall be provided by a private consultant or a representative of

11    Defendants who is familiar with the requirements of this Consent Decree and the Storm

12    Water Permit. The training shall be repeated annually, or as necessary to ensure that all

13    such employees are familiar with the requirements of this Consent Decree, the Storm

14    Water Permit, and the Compton Transfer Facility's SWPPP. All new staff shall receive

15    this training before assuming responsibilities for implementing the Compton Transfer

16    Facility's SWPPP or M&RP.

17       60.      Defendants shall maintain training records to document compliance with this

18    section, and shall provide Waterkeeper with a copy of these records within fourteen (14)

19    days of receipt of a written request.

20    **J.**     **Compliance Monitoring and Reporting**

21       61.      <u>Waterkeeper Site Inspections</u>. Every year during the life of this Consent

22    Decree, up to three (3) Waterkeeper representatives and/or consultants (including an

23    attorney) may conduct one (1) Wet Season site inspection and one (1) Dry Season (June 1

24    – September 30) site inspection of the Compton Transfer Facility. The site inspections

25    shall occur during normal business hours. Waterkeeper shall provide Defendants with

26    forty-eight (48) hours notice (weekends and holidays excluded) prior to each Wet Season

27    site inspection and forty-eight (48) hours notice (weekends and holidays excluded) prior

28    to each Dry Season site inspection. Notice shall be provided by telephone and electronic

mail, and shall state the names of all persons that Waterkeeper will bring to the inspection.

62.     During the site inspections, Waterkeeper and/or its representatives shall be allowed access to the Compton Transfer Facility's SWPPP(s), M&RP, and all other monitoring records, reports, and sampling data for the Compton Transfer Facility.

63.     During the site inspections, Waterkeeper and/or its representatives may collect storm water samples at the Compton Transfer Facility.

64.     During the site inspections, Waterkeeper may take photographs or video recording of the Compton Transfer Facility. If Waterkeeper takes any photographs and/or video recording, Waterkeeper shall provide Defendants with the photographs and/or video within fourteen (14) days after any written request by Defendants for such photographs and/or videos.

65.     Compliance Monitoring and Oversight. Defendants shall pay a total of Two Thousand Nine Hundred Dollars ($2900) to compensate Waterkeeper for costs and fees to be incurred for monitoring Defendant's compliance with this Consent Decree. Payment shall be made within five (5) days of the Effective Date payable to "Los Angeles Waterkeeper" and delivered via wire transfer to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401. Upon request, Waterkeeper shall provide Defendants with documentation of the fees and costs incurred in connection with compliance monitoring and oversight activities.

66.     Action Plan Payments. Defendants shall pay Three Thousand Five Hundred Dollars ($3,500) each time an Influent Action Plan is submitted to Waterkeeper, except that where the Action Plan proposes the treatment of storm water using a biological or mechanical treatment process (as opposed to, for example, the installation of additional roofing or the use of additional Filtrexx Envirosoxx or Grattix boxes), then the payment shall be Six Thousand Dollars ($6,000). Payments shall be submitted simultaneously with the submittal of the Influent Action Plan. Payments shall be made payable to "Los Angeles Waterkeeper" and addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite

105, Santa Monica, CA 90401. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

67.     <u>Data Reporting</u>.  During the life of this Consent Decree, Defendants shall provide Waterkeeper with a copy of all Consent Decree and Storm Water Permit compliance and monitoring data, including inspection reports, related to the Compton Transfer Facility's coverage under the Storm Water Permit on a bi-monthly basis.

68.     <u>Document Provision</u>. During the life of this Consent Decree, Defendants shall copy Waterkeeper on all documents related to water quality at the Compton Transfer Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county, or municipality. Such reports and documents shall be provided to Waterkeeper on the date they are sent to the agencies, counties, and/or municipalities. Any correspondence related to Defendants' compliance with the Storm Water Permit or storm water quality received by Defendants from any regulatory agency, state or local agency, county, or municipality shall be provided to Waterkeeper within ten (10) days of receipt by Defendants.

**K.   Environmental Project, Reimbursement of Litigation Fees and Costs, and Stipulated Payments**

69.     <u>Environmental Project</u>. To remediate the alleged environmental harms resulting from non-compliance with the Storm Water Permit alleged in the Complaint, Defendants agrees to make a payment of Thirty Thousand Dollars ($30,000) to the Rose Foundation to fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities on the Southern California Bight and its tributaries. The payments shall be made within three (3) days of the Effective Date payable to "Tim Little, Rose Foundation for Communities and the Environment" and delivered via wire transfer to: 1970 Broadway, Suite 600, Oakland, California 94612-2218. Defendants shall provide Waterkeeper with a copy of such payment.

70.     <u>Reimbursement of Waterkeeper's Fees and Costs</u>. Defendants shall pay a

total of Thirty-Seven Thousand Dollars ($37,000) to Waterkeeper to partially reimburse Waterkeeper for its investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made within three (3) days of the Effective Date payable to "Los Angeles Waterkeeper" and delivered via wire transfer to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401.

71.     <u>Stipulated Payment</u>. The Defendants shall make a remediation payment of One Thousand Dollars ($1,000) for each missed deadline included in this Consent Decree, not excused by Force Majeure. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by the Defendants' alleged discharges and shall be awarded to the Rose Foundation for Communities and the Environment.  Defendants agree to make the stipulated payment within thirty (30) days of a missed deadline. The payments shall be mailed via regular mail to the attention of Tim Little, Rose Foundation for Communities and the Environment, 1970 Broadway, Suite 600, Oakland, California 94612-2218. The Defendants shall provide Waterkeeper with a copy of each such payment at the time it is made.

## IV.   <u>DISPUTE RESOLUTION</u>

72.     This Court shall retain jurisdiction over this matter until the final termination date defined in paragraph 9 above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

73.     <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a

period of ten days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

74.     If the Settling Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

75.     <u>Enforcement Fees and Costs</u>. Litigation costs and fees incurred in conducting a meet and confer session(s) or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, may be awarded at the Court's discretion to either Party in accordance with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

## V.     <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>

76.     <u>Waterkeeper's Release</u>. Upon the Effective Date of this Consent Decree, Waterkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, Defendants (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waives all claims alleged in the Notice Letter and/or Complaint up to the Effective Date of this Consent Decree.

77.     <u>Defendants' Release</u>. Upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives releases Waterkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and

each of their successors and assigns, and its agents, attorneys, and other representatives) from and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Waterkeeper's Notice Letter and Complaint up to entry of this Consent Decree by the Court.

78.     Upon Court approval and entry of this Consent Decree, the Court shall retain jurisdiction over Republic Services, Inc. for the sole purpose of enforcing the guaranty of Republic Services, Inc. of the performance of the obligations of Defendants. Republic Services, Inc. in executing this Consent Decree guarantees the performance of all obligations of Defendants, including, but not limited to, the payment of any monetary sums required under this Consent Decree.

79.     Nothing in this Consent Decree limits or otherwise affects Waterkeeper's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Defendants' compliance with the Storm Water Permit or the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

## VI.   **MISCELLANEOUS PROVISIONS**

80.     <u>No Admission of Liability</u>. Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

81.     <u>Force Majeure</u>. Force Majeure includes any act of God, war, fire, earthquake, flood, or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from, any

governmental agency. Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

a.      If Defendants claim Force Majeure, they shall notify Waterkeeper in writing within twenty-one (21) days of the date that Defendants first knew of the event or circumstance that caused or would cause a violation of this Consent Decree. The notice shall describe the reason for the nonperformance and the specific obligations under the Consent Decree that are or have been affected by the Force Majeure. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendants to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. Defendants shall adopt all reasonable measures to avoid and minimize such delays.

b.      In the case of governmental permits and approvals required for structural BMPS, Defendants shall diligently file and pursue all required local agency applications for permits for the structural BMPs described in this Consent Decree, and shall diligently pursue the procurement of contractors, labor and materials to complete all such BMPs by the deadlines set forth herein, and shall use their best efforts to meet these deadlines. Defendants may be excused from meeting the deadlines in this Consent Decree for a specific BMP if circumstances beyond the reasonable control of Defendant as well as delays in obtaining any required governmental permits or approvals due to the permitting agency's actions or inactions or delays associated with the fabrication and/or construction of materials and structural BMPs prevent the attainment of the deadline for a

specific BMP. Such delays may only be excused if all of the following requirements are met: 1) Defendants have notified Waterkeeper via email, telephone call, and first class mail within ten (10) days of first learning about the anticipated delay; 2) Defendants continue to exercise due diligence and best efforts in pursuing the permitting and implementation of the BMP in question and proposes a reasonable revised deadline; and 3) Defendants meets the revised deadline. Any excused delay shall not excuse Defendants from implementing their other, unexcused obligations under this Consent Decree. The estimated average time for installation of an infiltration basin, cattle grid, and exit trench from the time of receiving the permit is 3-4 weeks from receipt of the permit. The estimated average time for installation of a canopy from the time of receiving the permit is 8-9 weeks from receipt of the permit.

      c.    The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible due to Force Majeure, despite the timely good faith efforts of Defendants, new deadlines shall be established.

      d.    If Waterkeeper disagrees with Defendants' notice of Force Majeure, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section IV. In such proceeding, Defendants shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by Force Majeure and the extent of any delay attributable to such circumstances.

82.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

83.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

84.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence

of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

85.      Correspondence. Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

If to Plaintiff:

Tatiana Gaur, Staff Attorney
tgaur@lawaterkeeper.org
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, California 90401

With copies to:

Liz Crosson, Executive Director
liz@lawaterkeeper.org
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, California 90401

If to Defendants:

Thomas M. Bruen (Bar No. 63324)
tbruen@tbsglaw.com
Law Offices of Thomas M. Bruen, P.C.
1990 N. California Boulevard, Suite 620
Walnut Creek, California 94596

With copies to:

Ron Krall
rkrall@republicservices.com
Area President
12949 Telegraph Road
Sante Fe Springs, California 90670

Tim Benter
tbenter@republicservices.com
Vice President and Deputy General Counsel
Republic Services, Inc.
18500 North Allied Way
Phoenix, Arizona 85054

Notifications of communications shall be deemed submitted three (3) business days after having been set via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

86. <u>Effect of Consent Decree</u>. Except as provided herein, Waterkeeper does not, by its consent to this Consent Decree, warrant or aver in any manner that Defendants' compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

87. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

88. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

89. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

90. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent

25

Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

91.     <u>Authority</u>. The undersigned representatives for Plaintiff and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

92.     The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

93.     The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IT IS SO ORDERED.**

Date:  October 10, 2014

_____
Honorable Dean D. Pregerson
United States District Judge
Central District of California